UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL ORR,<br><br>Plaintiff,<br><br>v.<br><br>DANA LANTRIP Registered Nurse at the WVS, SCU, et al.,<br><br>Defendants. | ) | No. 1:23-cv-02322-SEB-CSW |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Orr is a former IDOC prisoner, but the events that gave rise to his complaint occurred when he was incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). Mr. Orr brought this lawsuit against Nurse Dana Lantrip and Centurion Health of Indiana ("Centurion"), alleging that Centurion lacked standardized procedures to guide the nursing staff in the determination of whether an offender should be put on hunger strike protocol and assessed every 24 hours and that Nurse Lantrip was dismissive of the medical issues of which he complained while he was on hunger strike on July 12, 2022. Dkt. 1 at 2-3.

Upon screening of Mr. Orr's complaint, the Court allowed Mr. Orr to proceed with Eighth Amendment medical deliberate indifference claims against Nurse Lantrip and claims against Centurion under the theory recognized in *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). Dkt. 17 at 4. Defendants move for summary judgment, contending that (1) Mr. Orr has not alleged an implied or explicit policy or practice to render Centurion liable and his claim against them is barred by claim preclusion and (2) Nurse Lantrip was not deliberately indifferent to his serious medical needs. For the reasons that follow, Defendants' motion for summary judgment, dkt. [35], is **granted**.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for

summary judgment, the movant 'still [has] to show that summary judgment [is] proper given the undisputed facts,'" *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011), with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Defendants' motion for summary ruling, dkt. [46], is **denied**. The Court will not blanketly grant Defendants' motion because Mr. Orr has not responded.

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Orr and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all relevant times, Mr. Orr was incarcerated at Wabash Valley. Dkt. 36-1 at 1-5 (Orr Medical Records).

Defendant Nurse Dana Lantrip was a nurse employed by Centurion who worked at Wabash Valley. Dkt. 1.

### B. Mr. Orr's Hunger Strikes and Subsequent Healthcare

On September 10, 2021, Mr. Orr arrived at Wabash Valley. Dkt. 36-1 at 1-5. Within a day of arriving, he had submitted a healthcare request form, which stated, "I have not ate in over 24 hours do that means Im on a hunger strike. I feel depressed." *Id.* at 6 (errors in original). Wabash Valley medical staff began to assess Mr. Orr's condition every day and educate him on the dangers of long-term fasting. *Id*. at 7-16. On September 21, 2021, Mr. Orr told medical providers that he "understood the dangers of hunger strike and the toll it takes on the body…", but he continued to refuse food, fluids, and medication until he was found unresponsive in his cell. *Id.* at 16-20. Mr. Orr was taken to an outside hospital and treated for dehydration, acute kidney injury, and starvation

ketoacidosis. *Id.* at 21-29. On September 23, Mr. Orr returned to Wabash Valley. *Id.* at 30-31. Upon his return, he quickly declared another hunger strike and was placed in the infirmary for IV fluids and close observation. *Id.* at 32-37. A non-party nurse informed Mr. Orr that he would be discharged from the infirmary if he continued to refuse all care, but Mr. Orr responded that he did not care and was not going to eat. *Id.* at 43.

In the Spring of 2022, Mr. Orr began another hunger strike, and on March 2, he began receiving daily hunger strike assessment nursing visits from medical staff. *Id*. at 47-48. On March 4, Mr. Orr stated that he was lightheaded and dizzy because he had not had anything to eat or drink in five days. *Id.* at 52. The nurse noted that he also had been refusing his medication. *Id.* He was admitted to the infirmary and given IV fluids. *Id.* He told medical staff that he "felt better but still wasn't going to eat or drink." *Id.* The following day, Mr. Orr claimed to be having chest pain and received an EKG with normal results. *Id*. at 53-56. A non-party nurse advised that the pain could be caused by acid in his stomach and offered Mr. Orr a nutritional drink, which he refused. *Id*. On March 7, during his daily hunger strike assessment, Mr. Orr told nursing staff he had been vomiting bile for the prior two days and experiencing chest pain. *Id*. at 58. At the infirmary, he received IV fluids and had another EKG taken, which again returned as normal. *Id*. at 62.

On March 8, Mr. Orr was seen again for a hunger strike assessment where he continued to refuse medication and complain of chest pain. *Id*. at 63-64. At the visit, nursing staff again educated Mr. Orr on the dangers of hunger strikes. *Id*. On March 9, Mr. Orr was taken to the infirmary and given IV fluids. *Id*. at 65. On April 7, Mr. Orr was seen for a hunger strike assessment by nursing staff and reported he had been drinking very little and refusing medications. *Id*. at 67-68. The nurse provided education on the dangers of hunger striking to which Mr. Orr voiced understanding. *Id*. On April 9, Mr. Orr was seen by a nurse for another hunger strike assessment. *Id*. at 69-70. Mr.

Orr refused to acknowledge the nurse's recommendations to eat, drink, and take his medication and refused to participate in the majority of his assessment. *Id*. He offered to come off of hunger strike for a nutritional drink, but the nurse advised that he did not have a standing order for the drinks and that she had seen two of the drinks already in his cell. *Id.*

On April 27, Mr. Orr reported chest pain and was evaluated by medical staff. *Id.* at 71-74. A nurse noted in medical records that Mr. Orr showed no indication of pain but would state "it hurts" without further elaboration. *Id*. at 74. On June 24, 2022, a mental health professional noted within Mr. Orr's medical charts that he would agree to eat when he could choose his food but would immediately return to a hunger strike when the options were revoked. *Id.* at 75. On June 26, July 4, July 5, Mr. Orr refused to be seen by medical staff for daily hunger strike assessments. *Id.* at 79-84. On July 9, Mr. Orr was seen in the medical office for complaints of back and abdominal pain. *Id*. at 85-87. On July 10, Mr. Orr again refused a hunger strike assessment. *Id*. at 88-89.

On July 12, Mr. Orr was seen by a non-party MA Chelsey Pearison and refused to have his labs drawn or sign a refusal form. *Id*. at 90-91. The form was instead signed by the officers present to escort Mr. Orr and MA Pearison. *Id.* at 91.

On July 13, 14, and 19, Mr. Orr refused hunger strike assessments. *Id.* at 92-97. He also refused to have labs drawn again on July 19. *Id*. at 98.

On December 23, 2023, Mr. Orr filed this lawsuit claiming that Nurse Dana Lantrip had refused to treat him on July 12, 2022, after he reported experiencing chest pain during a long-term hunger strike. Dkt. 1 Mr. Orr claimed that Nurse Lantrip "outright refused to check my vitals, provide intravenous fluids (if necessary), EKG testing (if necessary), and/or to provide the appropriate referral for me to be seen by a medical doctor, psychologist, or psychiatrist." Dkt. 1 at 2.

## III. Discussion

### A. Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Orr's mental health needs were objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Nurse Dana Lantrip acted with deliberate indifference—that is, that she "consciously disregarded a serious risk to [Mr. Orr]'s health." *Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, Mr. Orr "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

In his Complaint, Mr. Orr asserted the following facts regarding the Nurse:

> While being housed in the SCU on 7/12/22 at approx. 10:30 P.M., I suddenly awoke with extreme chest pains, shortness of breath, dizziness, sweating, and I could hardly move, walk, sit up, or lay back down in bed, or sleep. Around three hours

> later, during medication rounds, I told Lantrip that I felt depressed with no appetite and had not eaten or hydrated in several days. I also told Lantrip that I felt dizziness and paralyzing chest pains with shallow breathing, vomiting, weakness, and problems moving, laying in bed, and sleeping. At this time, Nurse Lantrip made dismissive comments stating, "I'm not checking your vitals because the dayshift nurses should've done that already. Lantrip outright refused to check my vitals, provide intravenous fluids (if necessary), EKG testing (if necessary), and/or to provide the appropriate referral for me to be seen by a medical doctor, psychologist, or psychiatrist. Lantrip did not help me as she could have. Specifically, Lantrip failed to engage in the most minimum basic standard of care by denying me non-prescription pain relief after I report paralyzing chest pains, dizziness, and weakness that exposed me to a substantial risk of harm.

Dkt. 1 at 2-3. The record reflects that Mr. Orr had been receiving continuous medical care in 2022 from March through July of 2022 due to his repeated hunger strikes. Even a cursory review of Mr. Orr's medical records reflect frequent assessments, EKGs, checks of his vitals, and advisement by medical staff of the risks of continued hunger striking. These records further reflect that although Mr. Orr contends he should have had his vitals checked on July 12, he frequently refused to allow nurses to check his vitals both prior to and after the incident in question. He has supplied no evidence that he was denied care or that any of Centurion's medical staff failed to ensure he was consistently being evaluated. Mr. Orr's claims within his complaint that Nurse Lantrip's actions failed to meet the basic standard of care amount to merely conclusory statements that are inconsistent with the voluminous records of the care he received before, during, and after July 12. "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up).

Further, there is no documentary evidence that Mr. Orr requested treatment for his complaints of chest pain, weakness, or dizziness from Nurse Lantrip or anyone else around July 12, 2022. The record reflects that on July 12, Mr. Orr was seen by a non-party MA Chelsey Pearison and refused to have his labs drawn or sign a refusal form. *Id*. at 90-91. The refusal form was signed by officers on the unit and MA Pearison but did not reflect any notation from Nurse

Lantrip. *Id.* [I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* For a public official to be individually liable for a subordinate's constitutional violation, the official must both "(1) know about the conduct and (2) facilitate, approve, condone, or turn a blind eye toward it." *Gonzalez v. McHenry County, Ill.,* 40 F.4th 824, 828 (7th Cir. 2022). Mr. Orr has presented no evidence that Nurse Lantrip had any personal involvement in the alleged constitutional violations. Summary judgment must be **granted** in Nurse Lantrip's favor.

## IV. Conclusion

Defendants' motion for summary ruling, dkt. [46], is **denied.**

Centurion Health, Inc., and Nurse Dana Lantrip's motion for summary judgment, dkt. [35], is **granted**.

Final judgment shall be entered.

**IT IS SO ORDERED.**

Date: 9/2/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MICHAEL ORR
2911 Angela Drive
Indianapolis, IN 46914

All Electronically Registered Counsel